THE STATE OF DELAWARE V. CHARLES H. HOBSON.

(*October* 18, 1951.)

SOUTHERLAND, Chief Justice, WOLCOTT and TUNNELL, Justices, sitting.

*H. Albert Young*, Attorney-General, *Stephen E. Hamilton, Jr.*, and *Louis J. Finger*, Deputy Attorneys-General, for the State.

*William S. Potter* and *James L. Latchum* (of Berl, Potter and Anderson) for the *amici curiae*.

*George T. Coulson* (of Morris, Steel, Nichols and Arsht) and *Albert J. Stiftel* for the defendant.

Supreme Court, No. 8, September Session, 1951.

SOUTHERLAND, C. J., delivering the opinion of the Court:

In the above cause now pending in the Superior Court of New Castle County that court has before it the question of the constitutionality of the *Act of Assembly approved June* 5, 1951, *Vol.* 48, *Laws of Delaware, C.* 299, regulating retail sales of motor fuels by establishing uniform regulations with respect to the size and location of signs stating the selling prices of such fuels. Pursuant to *Article IV, Section* 11, *Paragraph* (9), of the *Constitution of Delaware*, the Superior Court has certified to us

for hearing and determination the following questions of law:[1]

"Does the second paragraph of Section I of The Statute [the Act of June 5, 1951] violate either:

"A. Section 5 of Article I of the Constitution of the State of Delaware; or

"B. Section 7 of Article I of the Constitution of the State of Delaware; or

"C. Section 8 of Article I of the Constitution of the United States; or

"D. The First Amendment to the Constitution of the United States; or

"E. The Fourteenth Amendment to the Constitution of the United States."

By subsequent stipulation of the parties, approved by this Court, the following additional questions are deemed to have been certified to us:

Does the second paragraph of Section I of the Act violate either (1) the supremacy clause of Article VI of the Constitution of the United States, or (2) Article II, Section 16, of the Constitution of the State of Delaware?

The first two paragraphs of Section 1 of the act in question (hereinafter called "the Act of June 5") are as follows:

"Section 1. Every retail dealer in motor fuel shall publicly display and maintain on each pump or other dispensing device, from which motor fuel is sold by him, at least one sign and not more than two signs stating the price per gallon of the motor fuel sold by him from such pump or device, which price shall

---

[1]At the time of the approval of the certification in this case the constitutional amendment permitting questions of law to be certified to the Supreme Court had been in effect a very short time and no rules with respect thereto had been adopted. The procedure followed in this case, therefore, should not be considered as settling the practice for the future.

be the total price for such motor fuel, including all State and Federal taxes. Said sign or signs shall be of a size not larger than four inches by six inches and shall contain no information other than the said price per gallon, except that said sign or signs may state that the said price per gallon includes all taxes or may state the amount of such taxes which are included in the price. The statement of the total price per gallon, as shown by the figures used in any price computing mechanism constituting a part of any such pump or dispensing device, shall be considered as a sign within the meaning of this Section and no other or additional signs stating the price per gallon shall be required.

"No signs stating or relating to the prices of motor fuel, and no signs designed or calculated to cause the public to believe that they state or relate to the price of motor fuel, other than the signs referred to in the preceding pargaraph, shall be posted or displayed on or about the premises where motor feul is sold at retail."

The ultimate facts certified by the court below, supplemented by an approved stipulation of counsel, are these:

Charles H. Hobson, the defendant, is the owner and operator of a service station at Hockessin, Delaware, at which motor fuel is sold to the public at retail. Esso Standard Oil Company leases to Hobson the dispensing equipment and furnishes his entire supply of gasoline. That company has no facilities in Delaware for the production and refining of gasoline and transports gasoline for use or sale in Delaware from places in other States of the United States.

For a period of at least six months prior to the enactment of the Act of June 5, there existed in Delaware "a price war" in the retail motor fuel industry.

On July 11, 1951, the defendant was arrested and charged with a violation of the provisions of the Act of June 5, and subsequently the Attorney General filed an information alleging

that the defendant had violated the Act by displaying at his service stations signs of dimensions and specifications contrary to law, "in that [he] did display signs measuring approximately 2½ x 3 ft." It appears, inferentially, that the signs stated the price at which motor fuel was offered for sale to the public. Thereafter the defendant filed a motion to quash the information on the ground that the Act of June 5 is unconstitutional. The motion raised the questions originally certified by the Superior Court. Later (after certification to this Court) the motion was amended to raise the two additional questions above set out.

In the course of the proceedings below counsel for Gasoline Retailers of Delaware were given leave to file a brief as *amici curiae,* and have filed a brief in this Court.

In his treatment of the questions certified to us defendant assigns five distinct grounds upon which he assails the constitutionality of the Act of June 5. Defendant says:

I.   That the Act conflicts with the ceiling price regulations of the Office of Price Stabilization, effective March 26, 1951, adopted pursuant to the Defense Production Act of 1950, and hence is invalid under the supremacy clause of Article VI of the Constitution of the United States.

II.   That the Act abridges the right of defendant to freedom of speech guaranteed him by the First and Fourteenth Amendments of the Constitution of the United States and by Article I, Section 5, of the Constitution of the State of Delaware.

III.   That the Act unduly burdens interstate commerce and is therefore repugnant to Article I, Section 8, of the Constitution of the United States.

IV.   That the title of the Act fails to comply with the provisions of Article II, Section 16, of the Constitution of the State of Delaware, providing that no bill shall embrace more than one subject, which shall be expressed in its title.

V.· That the Act deprives defendant of his property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States and Article I, Section 7, of the Constitution of the State of Delaware.

We take up these contentions in order.

I. *The ceiling price regulation.*

Ceiling Price Regulation 13, effective March 26, 1951, governs, among other things, all sales of motor fuel at service stations and other retail establishments, and prohibits such sales at prices higher than the ceiling prices fixed by the regulation. Section 12(d) of the regulation requires the dealer to "post the ceiling price for each grade of motor fuel * * * in a manner plainly visible to and understandable by each purchaser", and such postings must be marked "ceiling prices" or "our ceilings".

The first paragraph of the Act of June 5, above quoted, provides that every retail dealer in motor fuel shall display on each pump or other dispensing device from which motor fuel is sold at least one and not more than two signs "stating the price per gallon of the motor fuel sold by him from such pump or device * * *." The second paragraph prohibits the posting on or about the dealer's premises of any "signs stating or relating to the prices of motor fuel" or "designed or calculated to cause the public to believe that they state or relate to the price of motor fuel", other than the signs specified in the first paragraph of the section.

Defendant argues that the posting of any sign "relating to the prices of motor fuel", in addition to the specified signs on the pump, is prohibited; that a sign stating the ceiling price, as required by the federal regulations, is an additional sign "relating to the prices of motor fuel" and its posting is therefore forbidden by the state law; that this prohibition conflicts with the federal regulation and must fall, since under the supremacy clause of the federal Constitution the federal law must prevail.

■ The fallacy in this reasoning is manifest. The purpose of the Delaware statute is the regulation of signs which make known to the public the actual selling price of motor fuel, which, so far as concerns the state law, may be any price whatever. The purpose of the federal regulation is the control of the price itself and the disclosure to the customer of the highest permissible price. For our present inquiry the two ends are unrelated; the accomplishment of one purpose in no way obstructs the accomplishment of the other. Hence the ban of the state law against the display of additional signs, construed in the light of its intent and purpose, does not extend to the posting of ceiling prices, and the supposed repugnancy does not exist. The word "price" in the second paragraph of Section 1 means "actual selling price".

■ Moreover, we do not attribute to the General Assembly an intent to hinder the enforcement of the federal law. Even if the Delaware statute, read literally, were susceptible of the construction which defendant urges, it would be our duty to reject that construction, since we are required, as between two possible constructions, to adopt the one which will uphold its validity. *Collison v. State ex rel. Green*, 9 *W. W. Harr.* 460, 484, 2 *A.* 2d 97, 119 *A. L. R.* 1422.

We hold that the Act of June 5 does not attempt to forbid the posting of ceiling prices and therefore does not conflict with Regulation 13 of the Office of Price Stabilization.

II. *Abridgment of freedom of speech.*

Defendant invokes the guarantees of freedom of speech and of the press embodied in the First Amendment to the Constitution of the United States and incorporated into the Fourteenth Amendment, *Lovell v. City of Griffin*, 303 *U. S.* 444, 58 *S. Ct.* 666, 82 *L. Ed.* 949; and also the similar provision in Article I, Section 5, of the Constitution of Delaware.

It is said that the Act of June 5, under the guise of a police

regulation, seeks to limit the right of defendant to utter and publish, on his own property, any effective statement of the price of the gasoline he sells, and that the purported protection of the public against misleading advertisements relating to such sales does not justify such a regulation.

We do not think that the guarantee of freedom of speech has any application to such commercial activities as are here involved. The most recent pronouncement of the Supreme Court of the United States so indicates. In *Breard v. City of Alexandria*, (1951) 341 *U. S.* 622, 71 *S. Ct.* 920, 932, the issue was the constitutionality of an ordinance of the City of Alexandria forbidding solicitors or transcient vendors of merchandise from entering upon a private residence without the invitation of the owner or occupant for the purpose of soliciting orders for the sale of goods. Upholding a conviction of a salesman of magazines against a contention of invalidity of the ordinance under the First Amendment, the Court, speaking through Mr. Justice Reed, said: "Finally we come to a point not heretofore urged in this Court as a ground for the invalidation of a Green River ordinance. This is that such an ordinance is an abridgment of freedom of speech and the press. Only the press or oral advocates of ideas could urge this point. It was not open to the solicitors for gadgets or brushes."

If the First Amendment does not forbid the regulation—in some cases the prohibition—of the right to solicit the purchase of periodicals, with greater reason it would seem not to affect the state's power to regulate advertising in the public interest. Even though the First Amendment may not be wholly inapplicable to business activity, *Thomas v. Collins*, 323 *U. S.* 516, 65 *S. Ct.* 315, 89 *L. Ed.* 430, yet its reach does not, under the *Breard* decision, include the kind of persuasion that ordinarily attends the sale of merchandise. The Act of June 5 is therefore to be deemed a regulation of the use of property and not a curb on the communication of ideas. There is ample precedent for so regarding it. The regulation of advertising to prevent fraud

has long been deemed a proper subject for the exercise of the police power of the states. See the cases collected in the annotations to *People v. Kennedy, Ann. Cas.* 1916 *A,* 900 and *Bryan v. Cohen,* 89 *A. L. R.* 1004. Such statutes appear to have been seldom assailed as violative of the guarantee of freedom of speech, the attack having usually been based upon alleged violation of the Fourteenth Amendment, e. g., *St. Louis Poster Advertising Co. v. City of St. Louis,* 249 *U. S.* 269, 39 *S. Ct.* 274, 63 *L. Ed.* 599. In *People v. Osborne,* 17 *Cal. App. Supp.* 2d 771, 59 *P.* 2d 1083, cited by defendant, holding unconstitutional a municipal ordinance prohibiting the advertising of barber shop prices in publications and the display or price lists in windows or on the outside of buildings, the court's conclusion was based largely on the Fourteenth Amendment, although grounded in part on the First. The case is distinguishable here because it presented no question of the regulation of fraudulent or misleading advertising. On the important point of the scope of the guarantee of free speech, as applicable to business activity, it appears to be inconsistent with *Breard v. City of Alexandria, supra.* The latter case, so far as concerns the First and Fourteenth Amendments to the federal Constitution, is binding on us. So far as concerns the state Constitution, we regard it as persuasive authority.

It is our conclusion that the Act of June 5 does not offend against the constitutional guarantees of freedom of speech.

III. *The Commerce Clause.*

Defendant asserts that in selling gasoline at retail he is engaged in interstate commerce and that the restrictive provisions of the Act of June 5 unduly burden that commerce, and that therefore the Act is in conflict with the commerce clause of the federal Constitution and is void.

We think there is no substance in the argument. The retail sale of gasoline from filling stations in quantities to suit the purchaser does not constitute interstate commerce,

though all the gasoline that is dealt in must be brought from other states. *Askren v. Continental Oil Co.* 252 *U. S.* 444, 40 *S. Ct.* 355, 64 *L. Ed.* 654; *State v. Crane Hook Oil Storage Co.,* 2 *Terry* 194, 18 *A.* 2d 427. In *United States v. Mills,* (D. C.) 7 *F. Supp.* 547, 549, Judge Chesnut said: "Indeed it would be difficult to state an activity more clearly involving only intrastate commerce than the business of local sales of gasoline from filling stations."

Defendant says that the "original package" doctrine, applied in the *Askren* case, has been abandoned, citing *Baldwin v. G. A. F. Seelig, Inc.,* 294 *U. S.* 511, 55 *S. Ct.* 497, 79 *L. Ed.* 1032. We do not think so. On the contrary, it was held in that case to mark "a convenient boundary, and one sufficiently precise save in exceptional conditions". No such exceptional conditions are present here.

Even if we were to assume, *arguendo,* that defendant is engaged in interstate commerce, it would avail him nothing. The subject matter of the Act of June 5 is fraud. "Fraudulent or unconscionable conduct of those so engaged [in interstate commerce] which is injurious to their patrons, is peculiarly a subject of local concern and the appropriate subject of local regulation." *People of State of California v. Thompson,* 313 *U. S.* 109, 61 *S. Ct.* 930, 933, 85 *L. Ed.* 1219. "It is now well settled that a state may regulate matters of local concern over which federal authority has not been exercised, even though the regulation has some impact on interstate commerce." *Cities Service Gas Co. v. Peerless Oil & Gas Co.,* 340 *U. S.* 179, 71 *S. Ct.* 215, 219. As is recognized in the *Cities Service* case, the regulation must not "discriminate against or place an embargo on interstate commerce". Defendant apparently attempts to find such a discrimination or embargo in the asserted discouragement of competition for the trade of transient motorists between retail gasoline dealers in Delaware and dealers in nearby states; and cites *Sinnot v. Davenport,* 22 *How.* 227, 16 *L. Ed.* 243; *Nippert v. City of Richmond,* 327 *U. S.* 416, 66 *S. Ct.* 586, 90 *L. Ed.*

760; *H. P. Hood & Sons v. Du Mond,* 336 *U. S.* 525, 69 *S. Ct.* 657, 93 *L. Ed.* 865; and *Dean Milk Co. v. City of Madison,* 340 *U. S.* 349, 359, 71 *S. Ct.* 295. Analysis of these decisions is unnecessary. It is sufficient to say that we find in none of them any suggestion that a finding of unlawful discrimination in interstate commerce may be predicated upon a statute regulating price signs or advertising, or upon the supposed loss of trade resulting from the enforcement of such a statute.

We find that the Act of June 5 is not invalid under the commerce clause of the Constitution of the United States.

IV.   *The title of the Act of June 5.*

Article II, Section 16, of the Constitution of Delaware reads as follows: "No bill or joint resolution, except bills appropriating money for public purposes, shall embrace more than one subject, which shall be expressed in its title."

Defendant asserts that the title of the Act of June 5 is limited (so far as concerns the amendatory matter) to the one subject of the regulation of the size and location of price signs; whereas the body of the act embraces two other and unrelated subjects, viz.: (1) an absolute prohibition of the posting of any price signs other than those permitted by the first paragraph of Section 1; and (2) the prohibition forbidding the giving of rebates of the use of games of chance in connection with the sale of motor fuels.

The title of the Act reads: "An Act To Amend An Act Entitled 'An Act to Protect The Public Against Misleading Advertisements Pertaining To The Sale Of Motor Fuels At Retail By Regulating The Method Of Retail Sale Of Motor Fuels, And Providing Penalties For Violations' Being Chapter 70, Volume 42, Laws Of Delaware, By Providing For The Prohibition Of The Substitution Or Adulteration Of Petroleum Products, And Establishing Uniform Regulations With Respect To The Size

And Location Of Signs Indicating The Sale Price Per Gallon Of Motor Fuel."

Defendant builds his argument upon the rule that if the title of an amendatory act undertakes to specify the particulars of the amendment proposed, the subject matter of the body of the act is thereby circumscribed; and if the body of the act includes a subject foreign to the particulars so specified in the title, the act embraces more than one subject and is unconstiutional. *State ex rel. Morford v. Emerson, (Super. Ct.* 1939) 1 *Terry* 233, 8 *A.* 2d 154, 159.

The second objection, based upon the inclusion of the provision with respect to rebates and games of chance, is readily answered. The Act of June 5 is an amendment to the Act approved April 24, 1939, 42 *Del. Laws, c.* 70. The provision in the Act of June 5 is a mere re-enactment of an identical provision in the second paragraph of Section 1 of the Act of 1939, and hence for our present purpose, is no amendment at all. *State ex rel. Morford v. Emerson, supra,* decides the point. The title of the amendatory act then under consideration read: "An Act To Amend Chapter 166 Of The Revised Code Of Delaware, 1935, Providing For Reorganization Of The State Highway Department By Increasing The Membership Thereof." 42 *Del. Laws, c.* 172.

The constitutionality of the act was there assailed, as it is here, on the ground that the title of the amendatory act had undertaken to specify the particular amendment proposed, and that a provision in the body of the act fixing the Secretary's tenure of office was a matter foreign to the amendatory title. Judge Rodney said: "We doubt if the new provision is any amendment at all, or whether it introduces any new thought. It is more than possible that it simply expresses what theretofore had been left to implication."

*A fortiori,* a re-enactment of a provision expressly contained in the act amended is not to be considered, for title purposes,

an amendment, and its subject need not be included in the title, even if the title undertakes to specify the nature of the amendatory matter.

With respect to the prohibition of additional signs, contained in the second paragraph of Section 1 of the act, defendant makes, as we understand it, the following argument: The prohibition of additional gasoline price signs is a provision wholly unrelated to the regulation of the size and location of price signs, first, because it is prohibition and not regulation, and second, because the prohibitory clause has as its real object the discouragement or supression of competition. A retail dealer in motor fuel, says defendant, is effectively prevented from making known to the passing motorist his retail prices for motor fuel; therefore the subject matter of the prohibitory paragraph of the amendatory act, read in connection with the first paragraph of the section, is really price control through discouragement of competition—a subject wholly foreign to the subject of fraudulent or misleading advertising. So runs the argument. The suggestion that the real object—and the real subject matter— of the prohibitory provisions of the Act of June 5 is indirect price control derives some plausibility from the stipulated fact that prior to the enactment of the statute a "price war" had existed; and from the brief and argument of the Attorney General, which apparently concede that one of the objects, or at least effects, of the Act of June 5 is the indirect control of prices.

It is plain that the title of the amendatory act undertakes to specify the particular nature of the amendment, which is the establishment of "uniform regulations with respect to the size and location" of price signs; and if the subject matter embodied in the prohibitory provisions must be held to be that of price control and the act is deemed to cover both subjects, vis., fraud in retail sales and control of retail prices, we should have great difficulty in avoiding the consequent holding that the act violates Article II, Section 16, of the Constitution. Price control can hardly be said to be germane to the regulation of fraud:

and there is certainly nothing about the title of the Act of June 5 which would fairly apprise a member of the General Assembly or a member of the public that the act contained any provision relating to price control. If we were to conclude that the sole purpose and effect of the prohibitory provisions of the act, despite the avowed intent to curb fraud, is in reality the control of retail prices of motor fuel, there would be substance in the defendant's contention.

But we can make no such finding. That these provisions may have an incidental effect on prices is not sufficient to sustain the argument. As will appear hereafter, the prohibition of additional signs is germane, in some degree at least, to the subject of the act, viz., the prevention of fraud; and this is sufficient answer to the defendant's contention.

As for the point that the title fails to make specific reference to the prohibition of additional signs, we think it without substance. The title refers to regulation of the "size and location of signs", and the limitation upon the number of signs and the prohibition of additional ones are matters clearly germane to the general subject of the amendment as stated in the title. This is all that the Constitution requires. As Judge Pearson said in *State ex rel. James v. Schorr*, 5 *Terry* 232, 58 *A.* 2d 421, 427: "[T]here is not just one form of words, and one only, which can comply with the requirement that the title express the subject of an act. On the contrary, any form of words will do, so long as the body of the act is germane to the title."

The Act of June 5 is not unconstitutional because of its title.

V. *Due process of law.*

Defendant's principal attack upon the Act of June 5 is the charge that the provisions of the amendatory act deprive him of property without due process of law, in violation of both the federal and state Constitutions. It is urged that the act is an arbitrary attempt, under the guise of a police regulation, to

eliminate competition by forbidding any effective advertisement of prices. The purpose of the act, it is said, can be deduced from the omission from the amendatory act of June 5 of certain provisions in the original act of 1939 which were clearly related to the prevention of fraud, e. g., the provision in the act of 1939 that prices be "clearly and plainly" stated, and can also be inferred from the fixation of a *maximum* size of the permitted price signs, i. e., four by six inches, rather than a *minimum* size. Such being the real nature of the act, says defendant, it is an oppressive and unreasonable interference with a lawful incident of a lawful business, i. e., the right to advertise effectively to the passing motorist the price of motor fuel, and is therefore not a valid exercise of the police power and is unconstitutional. Defendant cites and relies chiefly upon the decisions of our Superior Court and Court of General Sessions in the cases of *Becker v. State*, (1936) 7 *W. W. Harr.* 454, 185 *A.* 92; *Hoff v. State*, (1938) 9 *W. W. Harr.* 134, 197 *A.* 75, and *State v. Danberg*, (1939) 1 *Terry* 136, 6 *A.* 2d 596; 131 *A. L. R.* 1285; as well as upon decisions in New Jersey, Connecticut and Michigan holding somewhat similar statutes unconstitutional.

That the Act of June 5 does restrain or interfere with the defendant in the use of his property is obvious. The question is whether the restraint is so unreasonable or arbitrary as to amount to a taking of property without due process of law.

The general principles of constitutional law relating to the state's police power and the limitations on its exercise have been frequently stated by our courts. In *Gallegher v. Davis and Law*, (*Super. Ct.* 1936) 7 *W. W. Harr.* 380, 183 *A.* 620, 625, Chief Justice Layton summarized the nature of the power and its limitations as follows: "The police power of the state, speaking broadly, comprehends the whole system of internal regulation. Under it the state seeks, not only to preserve public order, but also to establish between members of society standards of good manners and neighborliness which tend to prevent a conflict of rights. The power extends to such

restraints and regulations as are reasonable and proper to protect the lives, health, comfort, and property of citizens, and to promote the order, morals, safety and welfare of society. *Van Winkle v. State,* 4 *Boyce* 578, 91 *A.* 385, *Ann. Cas.* 1916 *D,* 104. Exact definition is impossible; there are limitations to the power and the significance to be given to the broad, general language of attempted definitions, is to be gathered from the facts of the particular case. *Mayor, etc., of Wilmington v. Turk,* 14 *Del. Ch.* 392, 129 *A.* 512. The power is always subject to express or implied constitutional prohibitions; but where not so restrained, the exercise of the power depends upon whether the situation presents a reasonable necessity for the protection of the public welfare, and whether the means adopted bear a reasonable relation to the end sought to be accomplished. Within these limits, the court will not assume to disturb the legislative action. *State v. Grier,* 4 *Boyce* 322, 88 *A.* 579. With the policy or wisdom of the act we have no concern. *State v. Allmond,* 2 *Houst.* 612."

In *Mayor & Council of Wilmington v. Turk,* 14 *Del. Ch.* 392, 129 *A.* 512, Chancellor Wolcott, in considering the limitations upon the exercise of the power, stated the rule in the language of the Supreme Court of Wisconsin in *State ex rel. Carter v. Harper,* 182 *Wis.* 148, 196 *N. W.* 451, 33 *A. L. R.* 269, to the effect that the legitimacy of its use depends upon "whether the situation presents a reasonable necessity for the imposition of restraint in order to promote the public welfare, and whether the means adopted bear a reasonable relation to the end sought to be accomplished." 14 *Del. Ch.* 402, 129 *A.* 516.

These tests would appear to accord with those stated by Justice Roberts in *Nebbia v. New York,* 291 *U. S.* 502, 504, 54 *S. Ct.* 505, 510, 78 *L. Ed.* 940: "And the guaranty of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained."

In applying these tests the rule is that every presumption is in favor of the validity of a legislative act and all doubts are resolved in its favor. In re *Blackstone*, 8 *W. W. Harr.* 230, 250, 190 *A.* 597; *Baxter v. State*, 9 *W. W. Harr.* 223, 227, 197 *A.* 678; *Collison v. State ex rel. Green, supra.* And if the question of reasonable necessity for the regulation is "fairly debatable, the legislative judgment must be allowed to control." In re *Ceresini*, 8 *W. W. Harr.* 134, 147, 189 *A.* 443, 449. The court is not required to find that a state of facts exists which justifies the legislation; it is sufficient if a state of facts may reasonably be conceived which would justify it. *Cf. De Pace v. Mayor and Council of Wilmington*, 5 *Terry* 319, 58 *A.* 2d 742, affirmed 6 *Terry* 300, 72 *A.* 2d 439; and see *Harlow v. Ryland*, (*D. C.*) 78 *F. Supp.* 488, and *Munn v. Illinois*, 94 *U. S.* 113, 24 *L. Ed.* 77.

Before these principles can be applied to the case at bar, however, a preliminary objection of the State (apparently not concurred in by the *amici curiae*) must be noticed.

It is suggested by the Attorney General, and forcefully argued, that the doctrine of judicial review under the Fourteenth Amendment (and under the analogous provision in Article I, Section 7, of our own Constitution) is applicable to procedure only, and that the courts are without power to consider any question of reasonableness in the substantive law itself. The rule invoked by defendant, it is said, has now been largely repudiated by the Supreme Court of the United States. Conceding that that court has not expressly eliminated what is called "substantive due process", it is nevertheless argued that this Court should do so—at least so far as concerns the construction of the Constitution of Delaware—because, it is said, adherence to the present Delaware rule will perpetuate the concept of "natural law" erroneously imported into American jurisprudence at a comparatively late period in its development, and not recognized by the early cases. *State v. Allmond*, 2 *Houst.* 612. In effect, the State asks us to overrule a line of decisions of our trial courts, many of them announced by a three-judge court, all of them

embodied in carefully considered opinions, covering a period of at least twenty-five years.[2]

We do not believe that such a drastic reversal of our decisional law is warranted on the basis of the State's argument. The field of judicial review of the reasonableness of legislation under the due-process clause of the Fourteenth Amendment has certainly been greatly narrowed, *Nebbia v. New York, supra; Olsen v. State of Nebraska ex rel. Western Reference & Bond Ass'n*, 313 *U. S.* 236, 61 *S. Ct.* 862, 85 *L. Ed.* 1305; *Lincoln Federal Labor Union v. Northwestern, etc., Co.*, 335 *U. S.* 525, 69 *S. Ct.* 251, 93 *L. Ed.* 212; but it does not appear to have been abolished. The rule announced in the *Nebbia* case, above quoted, appears to be recognized by Mr. Justice Clark in the recent case of *Cities Service Gas Co. v. Peerless Oil & Gas Co., supra* [340 *U. S.* 179, 71 *S. Ct.* 219], in which he says: "Like any other regulation, a price-fixing order is lawful if substantially related to a legitimate and sought to be attained" (citing *Nebbia v. New York, supra*).

And in *Wolf v. People of State of Colorado*, 338 *U. S.* 25, 69 *S. Ct.* 1359, 1361, 93 *L. Ed.* 1782, Mr. Justice Frankfurter, speaking for the Court said: "The real clue to the problem confronting the judiciary in the application of the Due Process Clause is not to ask where the line is once and for all to be drawn but to recognize that it is for the Court to draw it by

---

[2]The challenged doctrine is recognized in the following decisions: *Mayor & Council of Wilmington v. Turk, Ct. Ch'y.* 1925, 14 *Del. Ch.* 392, 129 *A.* 512; *State v. People's Drug Stores, Gen. Sess.* 1934, 6 *W. W. Harr.* 120, 172 *A.* 257; *In re Ceresini, Super. Ct.* 1936, 8 *W. W. Harr.* 134, 189 *A.* 443; *Becker v. State, Super. Ct.* 1936, 7 *W. W. Harr.* 454, 185 *A.* 92; *In re Blackstone, Super Ct.* 1937, 8 *W. W. Harr.* 230, 190 *A.* 597; *In re Lloyd, Super. Ct.* 1937, 9 *W. W. Harr.* 15, 196 *A.* 155; *Hoff v. State, Super. Ct.* 1938, 9 *W. W. Harr.* 134, 197 *A.* 75; *State v. Danberg, Gen. Sess.* 1939, 1 *Terry* 136, 6 *A.* 2d 596; *De Pace v. Mayor and Council of Wilmington, Super. Ct.* 1948, 5 *Terry* 319, 58 *A.* 2d 742, affirmed 6 *Terry* 300, 72 *A.* 2d 439; *Ajax Dist's. v. Springer, Ct. Ch'y.* 1941. 26 *Del. Ch.* 101, 22 *A.* 2d 838. And see *Van Winkle v. State, Super. Ct.* 1914, 4 *Boyce* 578, 91 *A.* 385, 392, in which Judge Woolley refers to the exercise of the police power by the state as extending "to such restraints and regulations as are reasonable and proper" to protect the public welfare.

the gradual and empiric process of 'inclusion and exclusion.' *Davidson v. New Orleans*, 96 *U. S.* 97, 104, 24 *L. Ed.* 616."

■ We therefore conclude that it is still the duty of this Court, in considering the scope of the due-process clause of the *Fourteenth Amendment* and of the analogous clause of the state Constitution, to apply to the challenged legislation the tests of the legitimacy of the end and the relation of the means selected to achieve that end.

We accordingly turn to an analysis of the provisions of the Act of June 5.

■ We have set forth above the provisions of the first two paragraphs of Section 1 of the act, which contain the changes from the prior act of 1939 which are material to our present inquiry. The subject matter of the act, as well as the end sought to be attained, is the prevention of fraud in the retail sales of gasoline; and we entertain no doubt that such an object supplies a legitimate occasion for the exercise of the police power. As pointed out above, the prevention of fraudulent or misleading advertising has long been deemed a proper subject of regulation under the police power. Defendant does not challenge the soundness of this principle; indeed, he could not even plausibly do so.

For this reason we lay aside consideration of the three decisions of our Superior Court principally relied on by defendant, which deal with attempts to regulate an entire industry, or with questions of fair trade practices. Whether, in view of *Nebbia v. New York*, the broad holdings in these cases are still authoritative is a question we find it unnecessary to consider. We are here concerned with a statute that is designed to prevent fraud; and defendant's attack is directed to the means selected by the legislature to suppress fraud. The means selected, says the defendant, viz., the control of the location, number and size of price signs, are not designed to prevent fraud; they have no relation

to the prevention of fraud; they are but "a convenient and appealing conception around which to eliminate competition."

This argument finds support in the following decisions: *Regal Oil Co. v. State,* 123 *N. J. L.* 456, 10 *A.* 2d 495; *State v. Miller,* (1940) 126 *Conn.* 373, 12 *A.* 2d 192; and *Levy v. City of Pontiac,* (1951) 331 *Mich.* 100, 49 *N. W.* 2d 80. Each of these cases involved a statute which required gasoline price signs of a size within specified limits to be displayed upon the pump and prohibited any other signs. In each case the prohibition against any other signs was held to have no reasonable relation to the public health, safety, morals or general welfare and to be unconstitutional.

The contrary view is reached in Massachusetts and New York. *Slome v. Godley,* (1939) 304 *Mass.* 187, 23 *N. E.* 2d 133; *Merit Oil Co. v. Director, etc.,* (1946) 319 *Mass.* 301, 65 *N. E.* 2d 529; *People v. Arlen Service Stations,* (1940) 284 *N. Y.* 340, 31 *N. E.* 2d 184. In these cases similar statutes were considered and upheld on the ground that the restrictions as to the location, number and size of the signs were reasonable as designed to prevent fraud.

We do not wholly agree with either conclusion. The requirement that the price sign be displayed on the pump and on the pump only presents, we think, a fairly debatable question as to its connection with the prevention of fraud. The limitation upon the size of such signs, however, appears to us to be so wholly unrelated to such a purpose that the question of its relation to fraud is not fairly debatable. As a part of a statute dealing with fraudulent or misleading conduct in retail sales, it is wholly arbitrary. We reach this conclusion on the following considerations.

The act requires that any sign stating the price of motor fuel shall be displayed and maintained on the pump or other dispensing device from which the fuel is sold. Bearing in mind that different grades of motor fuel, as well as different brands,

may be sold on the same premises, we think that there is a reasonably possible connection between the location and number of the price signs and the prevention of confusion and consequent deception. It is said in *Merit Oil Co. v. Director, etc.,* *supra* [319 *Mass.* 301, 65 *N. E.* 2d 531]: " * * * Signs may be arranged and worded so as to feature a certain grade or brand and to convey the impression that it is sold at less than the prevailing market price; or the signs may be set up so as to lead one to believe that the price displayed refers to one grade or brand when in truth it refers to another; or there may be such a wealth of signs with exaggerated and blatant statements of the virtues and prices of the products that the motorist is left in doubt and confusion; or a sign displaying a price in large figures, and placed near a pump on which the price sign required by the statute is posted, may lead the motorist to believe that he can purchase at the rate on the sign near the pump rather than at the price stated on the comparatively small sign posted on the pump."

So far as concerns the matter of the location and number of the price signs, we think the reasoning of the Supreme Court of Massachusetts persuasive. The statute is not unconstitutional because it restricts the location and the number of the signs displaying prices of motor fuel.

But the act goes much further. It specifically limits the size of the signs to "four by six inches". What relation can reasonably be conceived to exist between such a limitation and the prevention of fraud?

It is to be observed that the reasoning of the Supreme Court of Massachusetts, above quoted, falls short of justifying the limitation on the size of the price signs on the pump. We fail to find in the court's opinion in the *Merit Oil* case, or in the earlier opinion in the *Slome* case, any discussion of this point. As in the New York case, *People v. Arlen Service Stations, supra,* a reasonable relation between possible fraud and a maximum limita-

tion of the size of the price signs is assumed. With due respect to the courts that decided those cases, we do not think that the relation may be so readily assumed. That a requirement of a *minimum* size of price signs has a relation to the prevention of deception is obvious; but how can the establishment of a *maximum* limitation have any connection with such an end? As is said in the *Regal Oil* case, *supra* [123 *N. J. L.* 456, 10 *A.* 2d 498]: "If the regulation sign serves to prevent fraud and misrepresentation then surely * * * larger signs should even more effectively tend to accomplish the same result."

That the prohibition of large signs may have an effect on competition or may bear a relation to esthetic considerations is quite possible; and it was virtually conceded at the argument that price control is a proper subject for legislative action. But that concession does not help the State's case. The question is not whether the limitation of size has some effect upon prices; the question is whether it has any relation to the prevention of fraud. If it has some relation to the prevention of fraud, its validity is not impaired because of its incidental effect upon prices; but if it has no such relation, it is not saved from invalidation as an exercise of the power of the state over another subject not germane to fraud, since, in that case, as we have shown in our discussion of Point IV, the act would embrace more than one subject and would on that account be invalid. We must test the four-by-six-inch limitation by its relation to the admitted subject of the act—the prevention of fraud. So testing it we can discover no rational connection whatever. Moreover we cannot find in the briefs, nor did we hear at the argument, any suggestion from counsel of any reasonable relationship between the requirement that the price sign may not exceed four by six inches and the end the statute professes to attain. The lack of any such rational connection is emphasized by the omission of the requirement found in the act of 1939 that the price signs must state the price "clearly and plainly". Indeed the omission hints at a possible inconsistency between the four-by-six-inch limitation and the former requirement of a "clear and plain"

statement of the price. Certainly the amendment permits signs of any degree of smallness. At all events, whatever may have been the reason for the limitation, it cannot be found in an attempt to curb fraud upon the public.

Accordingly we are constrained to conclude that the attempted limitation of the maximum size of the price signs on the pump to four by six inches is wholly arbitrary and without any reasonable relation to the prevention of fraud or deception in the retail sale of motor fuel; and that the second paragraph of Section 1 of the Act of June 5, in so far as it fixes a maximum limitation upon the size of the price signs displayed upon the pump or other dispensing device, is in violation of the constitutional restrictions embodied in the Fourteenth Amendment to the federal Constitution and in Article I, Section 7, of the state Constitution.

This holding of invalidity of course goes only to the specific provision just discussed, i. e., the limitation of the maximum size of the price signs on the pump. We think this provision clearly severable from the remainder of the act. Section 7 of the act of 1939, to which the Act of June 5 is an amendment, sets forth the legislative will that if any part of the act is declared invalid "the remaining parts * * * shall be unaffected." It follows that the second paragraph of Section 1 of the Act of June 5 is, so far as concerns the other restrictions and limitations contained in the first paragraph of Section 1, valid and constitutional.

Order answering the certified questions in accordance with the foregoing opinion.