STATE *v.* FRANK DANBERG.

*(May* 1, 1939.)

RICHARDS, J., sitting.

*C. Edward Duffy,* Deputy Attorney-General, for the State.

*Robert H. Richards, Jr.,* (of Richards, Layton and Finger) for the defendant.

Court of General Sessions for New Castle County, Indictments Nos. 15 and 16, March Term, 1938.

RICHARDS, J., delivering the opinion of the Court:

The first reason relied upon by the defendant to quash the indictments against him, involves a construction of *Section* 16 of *Article* 2 of the *Constitution of Delaware*, which contains this language:

"No bill or joint resolution, except bills appropriating money for public purposes, shall embrace more than one subject, which shall be expressed in its title."

This article of our constitution has been considered by the Court on numerous occasions and it has consistently defined its purpose in these terms:

"It may be assumed as settled that the purpose of these provisions was:

"First, to prevent hodgepodge or log-rolling legislation;

"Second, to prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles gave no intimation, and which might, therefore, be overlooked, and carelessly and unintentionally adopted;

"Third, to fairly apprise the people through such publication of legislative proceedings as is usually made of the subjects of legislation that are being considered, in order that they may have an

opportunity of being heard thereon by petition or otherwise, if they shall so desire."

*Equitable Guarantee & Trust Company v. Donahoe,* 3 *Penn.* 191, 49 *A.* 372, 373; *Wilmington Trust Company v. Highfield,* 4 *W. W. Harr.* (34 *Del.*) 394, 399, 153 *A.* 864; *Baxter v.* State, 9 *W. W. Harr.* (39 *Del.*) 223, 197 *A.* 678; *In re Cypress Farms Ditch,* 7 *W. W. Harr.* (37 *Del.*) 71, 180 *A.* 536.

▮ The title of the *Act* under consideration shows clearly that the subject upon which legislation is sought is barber shops. *Section* 1 of the *Act* deals with advertising prices for barbering by barber shops: *Section* 2 of the *Act* deals with the days and hours of conducting the business of barbering in barber shops, and for securing special permits from the Board of Barber Examiners for certain privileges: *Section* 3 of the *Act* deals with the time and manner of adjusting the shades or curtains in barber shops: *Section* 4 of the *Act* provides that the proprietor of any barber shop in the city of Wilmington shall pay the sum of Two Dollars to the Board of Barber Examiners. *Section* 5 of the *Act* provides for penalties for its violation. Nothing can be found among the things above enumerated which are provided for by the *Act,* which is not germane to its title. It is quite true they are not specifically mentioned, but they all pertain to the business of conducting a barber shop and the title of the *Act* is sufficient to inform the public of its contents. The *Act* does not violate *Section* 16 of *Article* 2 of the *Constitution.*

The defendant makes the further contention that the statute under consideration, deprives him of the rights guaranteed to him under *Article* 14 of the *Amendments* to the *Constitution of the United States, U. S. C. A.,* also *Section* 7 of *Article* 1 of the *Constitution* of the state of Delaware. These provisions are generally referred to as, the

"due process clauses", and they have been considered by the Courts and their meaning explained in many cases.

The language found in our *Constitution* is:

"nor shall he be deprived of life, liberty or property, unless by the judgment of his peers or by the law of the land".

*Article fourteen* of the *Amendments* to the *Constitution of the United States,* denies the right of the States, to "make or enforce any law which shall abridge the privileges or immunities of citizens of the United States".

The defendant, Danberg, is the proprietor of a barber shop which he has conducted for many years at 210 King Street, in the City of Wilmington. He is licensed to maintain his business at said address by both the City and State; has always complied with the sanitary regulations, and his method or manner of carrying on his business is not questioned in any way other than the violation of this statute. His customers are working men who find it more convenient to come to his shop in the evening and on holidays. The shop is not kept open on Sunday, but I understand is open for business during a portion of the evening and during a portion of the time on holidays.

The prices charged for his services are commensurate with the ability to pay of those who patronize his shop.

█ █ It is contended on behalf of the State, that the purpose of the *Act* is to promote fair trade practices in reference to barber shops, which the State may do under its general police power. It must be conceded that this power is very broad, and includes the right to enact such measures as may be necessary to protect the public health, safety and morals. By virtue of this power the Legislature may regulate the various professions, occupations and businesses. But it must be held within some bounds, and these are found in *Fourteenth Amendment* to the *Federal Con-*

*stitution* and our *Constitutional* provision, above referred to.

The late Chief Justice Taft in the case of *Charles Wolff Packing Co. v. Court of Industrial Relations,* 262 *U. S.* 522, 43 *S. Ct.* 630, 633, 67 *L. Ed.* 1103, 27 *A. L. R.* 1280, in which a similar principle was involved, dealt with it in these terms:

"It has never been supposed, since the adoption of the Constitution, that the business of the butcher, or the baker, the tailor, the wood chopper, the mining operator, or the miner was clothed with such a public interest that the price of his product or his wages could be fixed by state regulation".

Our own Court has recently considered this question very fully in the case of *Becker v. State,* 7 *W. W. Harr.* (37 *Del.*) 454, 185 *A.* 92; also in *Hoff v. State,* 9 *W. W. Harr.* (39 *Del.*) 134, 197 *A.* 75, 82. In *Becker v. State, supra,* Chief Justice Layton thus stated the law [7 *W. W. Harr.* (37 *Del.*) 454, 185 *A.* 98]:

"But the object of the legislation must be the public good, not the benefit to individuals or classes.

＊　＊　＊　＊　＊　＊　＊　＊　＊

"Nothing is more clearly settled, under the *Fourteenth Amendment,* than that it is beyond the power of a state, under the guise of protecting the public ,arbitrarily to interfere with private business or prohibit lawful occupation, or impose unreasonable and unnecessary restrictions upon them".

Again in *Hoff v. State, supra,* he defined the law in these similar terms:

"To justify the State in interposing its authority in behalf of the public, it must appear that the interests of the public, as distinguished from those of a particular class, demand such interference; that the means employed are reasonably necessary for the accomplishment of the purpose; and that they are not unduly oppressive on individuals. The Legislature may not, under the guise of protecting the public interest, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations; nor is the determination by the Legislature as to what is a proper exercise of its police power final and conclusive, but is subject to supervision by the courts. *Lawton v. Steele,* 152 *U. S.* 133, 14 *S. Ct.* 499, 38 *L. Ed.* 385; 6 *R. C. L.* 241, 2 *Cooley Const. Lim. Ch.* 16. If,

then, the means employed are arbitrary and unreasonable, and beyond the necessities of the case, the courts will disregard mere forms, and will interfere for the protection of rights injuriously affected by such illegal action, *Minnesota v. Barber,* 136 *U. S.* 313, 10 *S. Ct.* 862, 34 *L. Ed.* 455; for they may and should look at the substance of things whenever they enter upon the inquiry whether the Legislature has transcended the limits of its authority. *Mugler v. Kansas,* 123 *U. S.* 623, 8 *S. Ct.* 273, 31 *L. Ed.* 205".

These decisions go into the question so thoroughly that it does not seem necessary to cite other authorities. By reference to them many of the leading cases in which the subject is considered will be found.

In *Ex parte Jentzsch,* 112 *Cal.* 468, 44 *P.* 803, 32 *L. R. A.* 664, a statute prohibiting the business of conducting a barber shop on Sunday in California, in which state there was no law prohibiting work on Sunday, was held to be an unconstitutional exercise of police power.

The Court in *Eden v. People,* 161 *Ill.* 296, 43 *N. E.* 1108, 32 *L. R. A.* 659, 52 *Am. St. Rep.* 365, *held* the Legislature by passing a law prohibiting the operation of a barber shop on Sunday in Illinois, where there was no general law forbidding work on Sunday, transcended its power by singling out one class of labor harmless in itself.

The case of *Chaires v. Atlanta,* 164 *Ga.* 755, 139 *S. E.* 559, 55 *A. L. R.* 230, in which an ordinance of the City of Atlanta requiring barber shops to be closed on week days at 7 P. M., except Saturdays when they should be closed at 9 P. M., further illustrates the question being considered, by holding that such an ordinance was unreasonable and discriminatory.

In *City of Alexandria v. Hall,* 171 *La.* 595, 131 *So.* 722, the Court *held* that an ordinance providing that barber shops should close at 6:30 P. M., except Saturday and preceding holidays, was an unwarranted and arbitrary interference with the constitutional rights of the defendant to carry on a lawful business.

*Armstrong v. State,* 170 *Ind.* 188, 84 *N. E.* 3, 15 *L. R. A.* (*N. S.*) 646; *Knight v. Johns,* 161 *Miss.* 519, 137 *So.* 509; *Patton v. City of Bellingham,* 179 *Wash.* 566, 38 *P.* 2d 364, 98 *A. L. R.* 1076; *State ex rel. Newman v. Laramie,* 40 *Wyo.* 74, 275 *P.* 106, are to the same effect.

The United States District Court for the Northern District of California, *Yee Gee v. City and County of San Francisco,* 235 *F.* 757, 759, in discussing an ordinance of the City of San Francisco regulating laundries therein, made this comment:

"The right to labor or earn one's livelihood in any legitimate field of industry or business is a right of property, and any unlawful or unreasonable interference with or abridgement of such right is an invasion thereof, and a restriction of the liberty of the citizen as guaranteed by the Constitution".

In *Adkins v. Children's Hospital,* 261 *U. S.* 525, 43 *S. Ct.* 394, 402, 67 *L. Ed.* 785, 24 *A. L. R.* 1238, the Supreme Court of the United States had under consideration the constitutionality of an Act of Congress, providing for the fixing of minimum wages for women and children, in the District of Columbia: Mr. Justice Sutherland used the following language in the opinion:

"To sustain the individual freedom of action contemplated by the Constitution is not to strike down the common good, but to exalt it; for surely the good of society as a whole cannot be better served than by the preservation against arbitrary restraint of the liberties of its constituent members".

How can it be successfully contended that the interests of the public demand that barbers be prohibited from advertising their prices in the manner specified by this Act; or that it shall be unlawful to conduct the business of barbering on New Year's Day, Memorial Day, Fourth of July, Thanksgiving Day, Christmas Day, or at any other time except between the hours of 8 A. M. and 8 P. M., unless by special permit obtained from the Board of Barber Examiners at a cost of One Hundred Dollars and good for one month only; or that on all Sundays and holidays the shades

or curtains of barber shops shall be adjusted so that a complete view of the interior may be obtained from the outside, and on all other days said shades and curtains shall be lowered entirely at 7 P. M. except Saturdays and days immediately preceding holidays when they shall be lowered at 8 P. M.? It is true that certain classes of professional men, such as lawyers and doctors, consider it unethical to advertise their charges for their services, but they take that course voluntarily and barbers have the same privilege if they so desire. There is very little difference between a barber advertising the price for which he sells his services to the public, and a merchant advertising the price for which he sells hats and shoes. It is impossible to walk along any business street in Wilmington without seeing various commodities exhibited and the prices for which they may be purchased plainly visible.

As a general proposition places of business, regardless of the particular line of business in which they may be engaged, open and close at such times as they think proper. If they have curtains or shades at the windows, as most of them do, they are raised and lowered at such times as they determine; depending to some extent upon the nature of the business and the position of the sun. Just as the merchant in fixing the price to be charged for his goods, includes the rent which he pays for his store and other fixed charges, the barber is likewise entitled to consider the rent which he pays and the other expenses of conducting his business, in determining the amount which he shall charge for his tonsorial services. Why should the Legislature be permitted to pass a law discriminating against the business of conducting a barber shop?

Those barbers whose places of business are located in a section of the City where they are able to receive more for their services than those who are located in other sections, or who find it unprofitable to open their places of

business before 8 A. M. and keep them open after 8 P. M., may think that it is unfair to allow others to advertise their prices or keep open for a longer period, but those who adopt that course certainly cannot be accused of pursuing unfair trade practices. It would be much more unfair to deprive that class of the public which is employed during the entire day, of the opportunity of obtaining the services of a barber at its leisure, and at a price which it is able to pay.

The principle of unfair competition in trade is founded on the proposition that equity will not permit one to advertise in a manner calculated to deceive the public, or pass off his goods or business as that of another. Where the public is not deceived it has been *held* there is no unfair competition. 63 *C. J.* 461; *Dare v. Foy,* 180 *Iowa* 1156, 164 *N. W.* 179.

It seems clear that the duties imposed upon those who conduct the business of barbering, are not only unnecessary for the protection of the public health, safety or welfare, but are an unjust and unreasonable discrimination against those who engage in that business; and that the Act violates *Article* 14 of the *Amendments* to the *Constitution of the United States* and *Section* 7 of *Article* 1 of the *Constitution* of this State.

An additional reason urged for quashing the indictments against the defendant, is that the statute violates *Article* 12 of the *Constitution* of this State. This article of the constitution provides for the establishment and maintenance of a State Board of Health, vested with supervision of all matters relating to public health, and for the establishment of such local boards of health as may be found necessary. *Chapter* 33 of the *Revised Code* of 1935, provides for the establishment of the Board of Examiners of Barbers, with powers to examine barbers and make rules and regulations in reference to the sanitary requirements of their

places of business. It is contended that *Chapter* 33 confers such broad powers on the Board of Examiners of Barbers that it constitutes said board a board of health, and that this is in violation of *Article* 12 of the *Constitution* of this State above referred to, which provides for the establishment of a State Board of Health and local boards of health where the same are required.

It is further contended that by reason of the fact that *Chapter* 33 violates *Article* 12 of the *Constitution,* the Board of Examiners of Barbers is a non-existent body, and therefore *Chapter* 184 of *Volume* 41 of the *Laws of Delaware*, being the Act under consideration, cannot be enforced as it provides for certain duties to be performed by said Board of Examiners of Barbers which does not legally exist.

As was stated at the beginning of this opinion, the indictments which are the subject of this litigation, charge the defendant with having failed to comply with the provisions of *Chapter* 184 of *Volume* 41, *Laws of Delaware.* The particular offenses with which he is charged, are advertising his prices, conducting his business on days prohibited by the Act and at hours prohibited by the Act and failing to adjust the shades or curtains at his place of business in conformity with the Act. There is no doubt that the Act provides for the application to the Board of Barber Examiners for a certain permit, and the payment of a fee of Two Dollars to cover the costs of its enforcement. That, however, is only incidental to the main provisions of the statute. The Board of Barber Examiners was created by a separate and independent statute and existed before the statute under attack was passed.

This statute is not directly attacked in this motion to quash the indictments.

Admitting that it may be indirectly affected by the

proceeding, that is not sufficient to convince me that I should also pass upon its constitutionality.

It is hereby ordered that the above mentioned indictments found against the defendant be quashed.