**Bewanda BLAKE et al., Appellants,**

**v.**

**STATE of Delaware, Appellee.**

Superior Court of Delaware,
New Castle.

Argued April 18, 1975.

Decided July 17, 1975.

David H. Erisman, Wilmington, for appellee.

Arlen B. Mekler, Wilmington, for appellants.

## OPINION ON APPELLANTS' MOTION TO DISMISS

LONGOBARDI, Judge.

The Appellants in this appeal attack the constitutionality of 11 Del.C. 1342 [1], a criminal statute prohibiting prostitution. The Appellants allege that since the statute is designed primarily to prohibit the selling of sex and because the sellers of sex are primarily women and because the statute is enforced only against women, the statute violates the equal protection of the law clause of the *Fourteenth Amendment* to the Constitution of the United States. In addition to being unconstitutional on its face, the Appellants argue that the unequal enforcement of that law; that is, the arrest of only females, presents an unconstitutional intrusion of their rights which they allege is a fundamental part of the equal protection of the law clause.

The State, in addition to supporting the constitutionality of the statute, has moved to dismiss the appeals of the Appellants Stokes and Chapman who entered pleas of guilty in the lower court. The State contends that the scope of review in these two cases should be limited to the sentences imposed by the lower court.

■ An attack upon the constitutionality of a statute probes the permissible depths of the police power of the State. In cases like this one where the "classification" does affect the rights of individuals within that classification, the scope of review amounts to weighing the interests of those individuals affected against the interests of society and the State. In equal protection of the law situations where a specific group is affected, it is not enough to recite perfunctorily the black letter principle that a court is bound to construe a statute in such a way as to preserve its constitutionality if such a construction is possible. *Opinion of the Justices*, Del.

Supr., 4 Storey 366, 177 A.2d 205 (1962). Indeed, the constitutional attack demands the bifurcated method of review which has been the decisional law of this State for many years. That method of review dictates an examination of the statute to determine whether its subject matter involves a permissible and legitimate concern of the State and whether the statute, the means to effect the end, is a reasonable tool for that purpose. *State v. Danberg*, Ct.Gen.Sessions Del., 1 Terry 136, 6 A.2d 596 (1939); *State v. Hobson*, Del.Supr., 7 Terry 381, 83 A.2d 846 (1951).

This method of review has been used by the United States Supreme Court construing statutes involving residents and non-residents, *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959); wives and daughters of male bar owners, *Goesaert v. Cleary*, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948); and the selection of river pilots, *Kotch v. Board of River Port Pilot Com'rs.*, 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093 (1947).

■ Applying those standards to the statute in question, one must determine whether the control or prohibition of prostitution is a permissible and legitimate concern of the State and whether the statute is designed in a reasonable fashion to deal with that problem; that is, is there a rational basis for the particular statute. Is the sale of the human body a legitimate concern of the State? Does prostitution lead to dissemination of disease? Should the State allow the public affront of any "open door" policy by which sex for sale is thrust upon non-interested citizens; that is, those who may be offended by the solicitation? Does prostitution lend itself to manipulation by criminal syndication with all its attendant nefarious transactions? Does prostitution lead to aggressive and violent transactions and other criminal ac-

1. 11 Del.C. 1342—A person is guilty of prostitution when he engages or agrees or offers to engage in sexual conduct with another person in return for a fee.

tivity? If the answer to any or all of these questions is "possibly," then the legitimate concern of the State is established and the second stage of review concerns whether the criminalization of the seller is a reasonable and rational means to accomplish the control of prostitution. A mere perusal of the criminal code of this State indicates the Legislature thinks so. The "seller" is more strictly controlled and more severely punished in any number of criminal statutes. More importantly, however, there is a legitimate and reasonable basis to conclude that curtailment of the seller's activities will reduce the incidence of criminal activity in a multi-party sequentially related crime situation.

■ The Appellants contend that the "minimum rationality" test is not applicable in this case. They argue that the statute should be subject to "strict scrutiny" since the classification in this particular is "inherently suspect." In situations of suspect classification, the legislation is subject to close judicial scrutiny. Examples are those based on race, alienage and national origin. In those situations, the classification must be "necessary" not "rationally" based to accomplish a "compelling" governmental interest. *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971). The policy supporting the doctrine of suspect classification has been the protection of discrete and insular minorities, the prevention of stigmatization and immutability. "A Question of Balance: Statutory Classifications Under the Equal Protection Clause," 26 Stan.L.Rev. 155.

■ The argument on suspect classification, however, is misplaced. Sex is not the basis for the classification of the statute sub judice. It is the crime of prostitution which under the terms of that statute can be committed by either male or female. There is no difference in a classification grouping prostitutes from those classifications grouping burglars, gamblers or sellers of narcotics.

The Appellants further contend that, in addition to those traditional classifications which have received strict scrutiny, there are those statutes which so severely limit or impinge upon a person's fundamental rights falling within the penumbra of rights emanating from the Bill of Rights that those statutes should receive strict scrutiny. In support of that proposition, the Appellants cite *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), reh. denied 410 U.S. 959, 93 S.Ct. 1409, 35 L.Ed. 2d 694; and *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). In each of those cases, the rights were so implicitly personal; that is, the right to use contraceptives, the right to terminate pregnancy and the right to view pornography in the privacy of one's home, that as was said in *Roe v. Wade* (supra), 410 U.S. page 152, 93 S.Ct. page 726, they are the "personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty', *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937), (and which) are included in this guarantee of personal privacy." This Court would be constrained by logic and common sense from saying that those personal rights implicit in those cases are the same or can be of the same order as the public sale of sex and the human body. The comparison cannot even be sustained with the right to use contraceptives. *Griswold* (supra). In one, the right involves the governmental intrusion into the marital decision of procreation. In the situation sub judice, the question involves the right, if there be a right, to publicly solicit and sell one's body which necessarily involves other members of the public. To be sure, the question surrounding each issue involves sex. But there is no logical nexus between the two.

■ The statute involved should not receive strict judicial scrutiny and, under the minimum rationality test, this Court finds

that 11 Del.C. 1342 does not violate the equal protection clause of the United States Constitution.

The Appellants next contend that they have been prejudiced by the unequal enforcement of the law and, therefore, their arrests should be dismissed based on a denial of their constitutional rights. The argument has found support in *Snowden v. Hughes*, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944), reh. denied 1944, 321 U.S. 804, 64 S.Ct. 778, 88 L.Ed. 1090; *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L. Ed. 220 (1886); *People v. Harris*, 182 Cal.App.2d Supp. 837, 5 Cal.Rptr. 852 (1960). See also "The Right to Nondiscriminatory Enforcement of the State Penal Laws," 61 Colum.L.Rev. 1103; "Discriminatory Law Enforcement and Equal Protection From the Law," 59 Yale L.J. 354. This issue will be resolved at a specially called hearing wherein the Appellants will have the burden of showing an intentional and purposeful discrimination in the enforcement of 11 Del.C. 1342. The Appellants must understand, however, proof that only women have been prosecuted under 11 Del.C. 1342 standing alone shall not be enough. It could be that the opportunity to arrest men was not as propitious, apparent or extant. Cf. *Virginia v. Rives*, 100 U.S. 313, 322, 323, 25 L.Ed. 667, 671; *Martin v. Texas*, 200 U.S. 316, 320, 321, 26 S.Ct. 338, 339, 50 L.Ed. 497 (1906); *Ah Sin v. Wittman*, 198 U.S. 500, 507, 508, 25 S.Ct. 756, 759, 49 L.Ed. 1142 (1905).

Finally the State has moved to dismiss the appeals of Appellants Stokes and Chapman because they entered guilty pleas to the charges in the lower court. The Appellants Stokes and Chapman contend that the constitutionality of a statute is a jurisdictional question and, therefore, proper at this stage. Since the Court has already decided the statute in question is constitutionally sound, their appeal is moot but for the question of whether they also seek to appeal from the unequal enforcement aspects of the equal protection clause. There is serious doubt whether the two Appellants have raised that issue. And there is serious doubt whether they can now raise that issue. A review of Appellants' reply brief, wherein the scope of review after a guilty plea was first addressed, is not definitive in raising a question about the latter constitutional question. In any event, that issue could also become moot after the evidentiary hearing on the issue of unequal enforcement of the law. The Court will reserve its decision on this question until after the evidentiary hearing.

It is so ordered.