HOUSEHOLD FINANCE CORPORATION,
a corporation of the State of Delaware, Plaintiff,

v.

Joseph H. JOHNSON and Emily Johnson,
Defendants.

Superior Court of Delaware,
New Castle.

Aug. 21, 1975.

R. H. Richards, III, of Richards, Layton & Finger, Elwyn Evans, Jr., Wilmington, for plaintiff.

Douglas A. Shachtman, of Community Legal Aid Society, Inc., Wilmington, for defendants.

## OPINION

WALSH, Judge.

In this appeal from the Court of Common Pleas for New Castle County, the underlying facts are not in dispute. On July 18, 1974, plaintiff-appellant, Household Finance Company (HFC) brought suit against defendants-appellees, Joseph and Emily Johnson in the Court of Common Pleas alleging that the defendants had defaulted in the repayment of a loan. A default judgment in the amount of $1,814.05 was entered on July 30, 1974. Pursuant to HFC's execution praecipe, the Sheriff laid a wage attachment in the hands of the Wilmington Medical Center to garnish the wages of its employee, defendant, Emily Johnson.

The garnishee remitted regularly to HFC under the wage attachment until September 30, 1974, when Emily Johnson filed a motion to dismiss the wage attachment and return the wages already deducted on the ground that the attachment was prohibited by 5 Del.C. § 2111(c).[1]

On December 12, 1974, the Court of Common Pleas, in a written decision, granted defendants' motion to dismiss the wage attachment and ordered the return of funds already deducted from the wife's wages. Re-argument was denied and this appeal followed.

Initially, HFC asserts that the word "attachment" as used in 5 Del.C. § 2111(c) refers strictly to pre-judgment or mesne attachments and not to execution attachments. The Court of Common Pleas found this argument to be unpersuasive, a position with which this Court is in agreement. HFC asserts that "any attachment" refers to domestic and foreign attachments only as authorized by 10 Del.C. §§ 3501–13, and stresses the dichotomy between the mesne attachment of Chapter 35 and the execution attachment authorized in 10 Del.C. § 5031. Therefore, it argues, 5 Del.C. § 2111(c) is not applicable to post-judgment execution attachments. It must be noted, however, that 5 Del.C. § 2111(c) concerns the attachment of wages alone, thus making a general inquiry into attachments irrelevant. 10 Del.C. § 4913(a) clearly deals with both pre and post-judgment attachment wages and provides in pertinent part:

"... exempt from mesne attachment process and execution attachment process under the laws of this State ..."

HFC contends that this is a demonstration of the required language to be used in referring to both mesne and execution attachment. This Court is not convinced that the Legislature intended the above language to be the exclusive means of referring to both mesne and execution attachment within a given statute. In 10 Del.C. § 4913(b) "attachment process" stands alone, without modifiers. Had the legislature wished to restrict its general scope it could easily have done so. The word "attachment" appears five times, but in no case with the modifying words "mesne or execution". On the basis of the

---

1. "In any action for the recovery or re-payment of the money loaned, the lender shall be entitled to recover only the principal sum loaned together with interest at six percent per annum, less the total payments made on said loan by the borrower; nor shall the lender be permitted to make *any attachment of wages* of the borrower, notwithstanding any contract or agreement to the contrary." (Emphasis added)

foregoing, there is no justification for reading "any attachment" as the words appear in 5 Del.C. § 2111(c) to exclude execution attachments.

■ As a second argument, HFC asserts that if 5 Del.C. § 2111(c) refers to post-judgment execution attachments, it is an arbitrary and discriminatory classification violative of the Equal Protection guarantees of the Federal and State Constitutions since 5 Del.C. § 2114 provides for a specific exemption from 5 Del.C. §§ 2101–2113 for national or state banks and trust companies organized under Delaware law. This exemption allows banks and trust companies to engage in the same wage attachment remedy which small loan companies are forbidden to pursue by 5 Del.C. § 2111(c).

In *Mayor and Council of City of Dover v. Kelley*, Del.Supr., 327 A.2d 748 (1974), the Delaware Supreme Court noted that it has recognized two separate standards for testing the constitutionality of statutory classification in equal protection cases prescribed by the Supreme Court of the United States. The Court states:

> "* * * If a case involves 'suspect classifications', or touches upon 'fundamental interests', legislative discriminations are subjected to a 'strict scrutiny', barring the application of the usual presumption of constitutionality and requiring the showing of a 'compelling state interest' which necessitates the law. However, in an equal protection case in which neither fundamental rights nor suspect classifications are involved, the traditional equal protection 'rationality' standard is applied, permitting the ordinary presumption of constitutionality. *Justice v. Gatchell*, Del.Supr., 325 A.2d 97 (1974)."

The instant case clearly does not concern an "inherently suspect classification" such as race, alienage, national origin or sex. *Husband M. v. Wife M.*, Del.Supr., 321 A. 2d 115 (1974). HFC, however, argues that the case does concern a fundamental right, that of meaningful access to the courts. *DuPont v. Family Court for New Castle County*, Del.Supr., 2 Storey 72, 153 A.2d 189 (1959). Recent United States Supreme Court law, however, dictates a contrary conclusion. In *United States · v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed. 2d 626 (1973), the United States Supreme Court held that access to a bankruptcy court to acquire a discharge in bankruptcy is not a fundamental right. Denying to small loan companies access to the wage attachment remedy does not create exclusivity problems. Although wage attachment has apparently been the primary device employed by small loan companies to satisfy delinquent accounts, it is by no means the sole remedy. Small loan companies may levy upon personal property, including automobiles, or upon real property. Clearly, these procedures offer to the small loan company a viable alternative to wage attachment.

Legislatively created debtors' rights and creditors' remedies, like bankruptcy legislation, fall within the realm of economics and social welfare, and are clearly distinguishable from such fundamental rights as free speech, religion and marriage which require the showing of a compelling governmental interest before they may be significantly regulated. See *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *United States v. Kras, supra*. Thus, the applicable standard to measure the propriety of the statutory distinction between small loan companies and banks is that of rational justification. *Flemming v. Nestor*, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960); *Dandridge v. Williams*, 397 U.S. 471, 25 L.Ed.2d 491, 90 S.Ct. 1153 (1970); *Richardson v. Belcher*, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971).

■ The prescribed method of review under the rational justification test involves, initially, an examination of the statute to determine whether its subject

matter involves a permissible and legitimate concern of the State and, secondly, whether the statute, the means to effect the end, is a reasonable tool for that purpose. *Blake v. State*, Del.Supr., 344 A.2d 260 (1975); *State v. Danberg*, Ct.Gen.Sessions Del., 1 Terry 136, 6 A.2d 596 (1939); *State v. Hobson*, Del.Supr., 7 Terry 381, 83 A.2d 846 (1951). The parties to this action agree that the regulation of the small loan business is a proper area for the exercise of police power, thus satisfying the first element of the test. This position is supported by Delaware case law. *State v. Wickenhoefer*, Ct.Gen.Sessions Del., 6 Pennewill 120, 64 A. 273 (1906); *State v. Bankers Finance Corporation*, Ct.Gen.Sessions Del., 2 Terry 566, 26 A.2d 220 (1942). Moving to the second element of the test, the Delaware Supreme Court recently stated in *Justice v. Gatchell, supra:*

> "In the area of equal protection especially, courts have traditionally afforded legislative classifications a presumption of reasonableness and constitutionality. . . . A statutory discrimination or classification will not be set aside if any state of facts reasonably may be conceived to justify it. *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Aetna Casualty and Surety Co. v. Smith*, Del.Supr., 36 Del. Ch. 391, 131 A.2d 168 (1957)."

The supplemental decision of the Court of Common Pleas of New Castle County below, dated January 7, 1975, persuasively sets forth the fundamental differences between small loan or finance companies and banks or trust companies which justify the statutory distinction between them in the available remedies for the collection of small loans.

> "Plaintiff argues that there should be no difference between it and a bank. Plaintiff's argument, however, overlooks the fact that there are significant fundamen-

tal differences between finance companies and banks. For instance, banks act as a receptacle of depositors' funds, which plaintiff does not. Banks engage in trust activities, which plaintiff does not. Banks make large secured loans, which plaintiff does not. In general, banks are a larger more established segment of the business community than finance companies. While these differences may seem insignificant to the plaintiff, the legislature obviously thought otherwise, and the Court does not find the legislative classification to have been arbitrary or capricious." [2]

This Court expressly approves the rationale of the court below and affirms its conclusion that 5 Del.C. § 2111(c) is not violative of the equal protection clause of the United States and Delaware Constitutions.

■ As a final argument HFC contends that the court below erred in ordering it to return to appellee Johnson all wages already collected from her ($314.62) without providing for a set-off in its favor against the existing judgment. This argument is without merit.

In *G.A.C. Finance Corp. v. Shaver*, Del. Super., 271 A.2d 43 (1970) the Court determined that a debt incurred in the purchase of a mobile home would not support wage attachment. The Court thereafter entered the following order of return:

> ". . . that all sums of money collected and received by the plaintiff pursuant to its attachment of defendants' wages are to be returned to the defendants on or before 11/23/70." (Superior Court Docket M–11–204, C.A. 69–6657, Order of November 18, 1970)

Since the Court has already determined that 5 Del.C. § 2111(c), which precludes small loan companies from pursuing the

---

2. To these differences could be added the scope of State regulation of banking through the extensive authority of the State Banking Commissioner under 5 Del.C., Chapter 9.

wage attachment remedy survives constitutional challenge, it follows that the wages were unlawfully attached, and the order to return them was properly issued by the Court below.

Although this Court may believe that HFC's wage attachment was made in good faith, without fraudulent intent and, in reliance upon its prior practice and that of its competitors, it is nonetheless without legal sanction. Of course, HFC still has a valid judgment against the defendants in the amount of $1,814.05 and may pursue alternative remedies in attempting to satisfy this judgment.

The decision of the Court of Common Pleas is affirmed.

It is so ordered.