**Daniel and Barbara WARD, Petitioners,**

**v.**

**Russell and Edna WARD, Respondents.**

Family Court of Delaware,
Sussex County.

Submitted: April 8, 1986.
Decided: March 2, 1987.

Peter B. Jones of Hudson, Jones, Jaywork & Williams, Georgetown, for petitioners.

Thomas J. Stumpf of Thomas J. Stumpf, P.A., Georgetown, for respondents.

ROBINSON, Judge.

Before the Court is a challenge to the constitutionality of the last sentence of 10 *Del.C.,* § 950(7) as amended in 1986 which deals with visitation between grandparents and their grandchildren.

10 *Del.C.,* § 950(7) as originally enacted in 1976 authorized the Family Court of the State of Delaware, upon petition, to grant grandparents reasonable visitation rights with their grandchildren. The Court could order such visitation "regardless of marital status of the parents of the child or the relationship of the grandparents to the person having custody of the child."

65 Del.Laws c. 243 (hereinafter referred to as § 950(7), as amended) which took effect on February 12, 1986, amended this section by adding the following proviso:

> Provided, however, that when the natural or adoptive parents of the child are cohabiting as husband and wife, grandparent visitation shall not be granted over both parents' objection.

In other words, the Court is prohibited from granting visitation to grandparents whenever both parents, who are living together, signify their objections to such visitation.

In May 1984 Russell and Edna Ward (petitioners) petitioned this Court under 10 *Del.C.,* § 950(7) for visitation with their grandchildren, Kathy L. Ward, born August 12, 1978 and Daniel Ward, Jr., born November 14, 1979. The children's parents are Daniel and Barbara Ward (respondents) and the case is somewhat unusual in that Daniel Ward is the son of Russell Ward and Barbara Ward is the daughter of Edna Ward. Thus, the elder Wards are both paternal and maternal grandparents of the children.

Mediation, normally required by the Rules of this Court in visitation matters, was by-passed and a hearing was held before Judge William Swain Lee on January 9, 1985. On February 12, 1985 Judge Lee issued an opinion and order in which he found that visitation with their grandparents was in the best interest of the Ward children. The Court recognized that "there is a high degree of animosity between parents and grandparents" and that Daniel and Barbara Ward blamed the elder Wards for the failure of Daniel Ward's business and for the loss of their home, with the resulting impact on the children. Nevertheless, the Court found that the grandparents and grandchildren had enjoyed and continued to enjoy an extremely close relationship and that the grandchildren wished to visit with their grandparents. The Court ordered visitation one weekend per month. *Ward v. Ward,* Del.Fam., Sussex Co. No. 41,094, Lee, J. (Feb. 2, 1985).

Daniel and Barbara Ward appealed to the Superior Court of the State of Dela-

ware in and for Sussex County.[1] Their application for a stay of the Family Court order pending appeal was denied. While the matter was on appeal, § 950(7) was amended as set forth above. On March 5, 1986 the Superior Court ruled that "the issue presented to this Court becomes, for obvious reasons, moot" and remanded the matter to Family Court. Daniel and Barbara Ward then filed an Emergency Motion for Summary Judgment and for Stay of Visitation. The emergency application was denied and the Court advised the respondents to proceed by petition to modify or terminate visitation.[2]

Daniel and Barbara Ward then petitioned the Court to modify visitation, and the petition was scheduled for hearing on April 8, 1986. Russell and Edna Ward moved to dismiss both the modification petition and the earlier motion for summary judgment, asserting that § 950(7), as amended, is unconstitutional.

The parties stipulated to certain facts pertinent to the modification petition and established a briefing schedule with respect to the motion to dismiss. The Court stayed visitation pending decision on the petition and motion. This, then, is the decision of the Court on the Motion to Dismiss.

■ Initially I must consider whether a Judge of the Family Court of the State of Delaware has authority to rule on a constitutional question.

The Delaware Constitution, Article IV, Section 1, provides that "[t]he judicial power of this State shall be vested in a Supreme Court, a Superior Court, a Court of Chancery, an Orphans' Court, a Register's Court ... *and such other courts as the General Assembly* ... shall have by law established prior to the time this amended Article IV of this Constitution becomes effective or *shall from time to time by law*

*establish* after such time." (Emphasis supplied.)

The Family Court of the State of Delaware was established by the General Assembly in 1971. 58 Del. Laws c. 114, 10 *Del.C.*, Ch. 9.

In *Bailey v. Railroad Co.*, Del.Ct. of Err. & App., 4 Harrington Del. Rept. 389 (1846), the Supreme Court construed the grant of "judicial power" contained in Article IV, Section 1 as including "the right and authority of judges, to determine and decide every question of law, necessarily arising in the progress of a trial, of which the court has jurisdiction from the nature of the cause of action ..." *Id.* at 414. This includes the power to address constitutional issues that arise, for "[they are] question[s] of law, to be decided by the court having jurisdiction of the case." *Id.*

> No one will contend, I presume, that if the Legislature should pass an unconstitutional act, the people of the State would be bound to obey it; and yet, if the power does not reside in the courts to pronounce it void, as it would be, it is difficult to conceive how the people could resist the wrong and re-assert the majesty of the Constitution, without resort to physical force, in case the Legislature should refuse to repeal it. *Id.*

It follows, then, that the Family Court, having been duly established by the General Assembly, has the power, if not the duty, to address the constitutional issues presented in this case. *See also: In re J.K.*, Del.Fam., No. A–1011, Warder, J. (Oct. 26, 1976) *rev'd* on other grounds *State v. J.K.*, Del.Supr., 383 A.2d 283 (1977); *In re E.W.D.*, Del.Fam., No. KC–76–68–0068–D, Kelsey, J. (May 12, 1977).

The power of judicial review should be exercised cautiously. According to the Delaware Supreme Court, legislative enactments are cloaked with a presumption of

---

**1.** Prior to the filing of the appeal, contempt proceedings were initiated alleging that Daniel and Barbara Ward had refused to comply with Judge Lee's order. After a hearing, Judge Lee reaffirmed his earlier order and warned respondents that failure to comply would result in sanctions.

**2.** At the time there was no formal summary judgment practice under the Rules of the Family Court. In addition, the Superior Court's ruling had not reversed the earlier order of the Family Court and it was not clear what effect, if any, § 950(7), as amended, had on orders entered pursuant to the earlier statutory provision.

constitutionality, *Kreisher v. State*, Del. Supr., 319 A.2d 31 (1973), and a statute will not be declared void unless its invalidity is established beyond a reasonable doubt by the one challenging it. *Atlantic Richfield Co. v. Tribbitt*, Del.Ch., 399 A.2d 535 (1977). Moreover, all reasonable doubt must be resolved in favor of the statute's constitutionality, and if a constitutional construction is possible, it should be followed. *Atlantis I Condominiums v. Bryson*, Del.Supr., 403 A.2d 711 (1979). I approach my task mindful of those admonitions and with deference to the authority of the General Assembly as arbiter of the state's policies with regard to families and family relationships.

Petitioners assert that § 950(7), as amended, is unconstitutional in three respects: First, that it deprives them of "due process of law"; second, that it denies them the "equal protection of the law"; and third, that the legislation violates the "separation of powers" principle of the Delaware Constitution. The constitutional guarantees of due process and equal protection are contained in the Fourteenth Amendment to the United States Constitution. Due process is also protected under Article I, Sections 7 and 9 of the Delaware Constitution of 1897.

### 1. *The "due process" argument:*

Russell and Edna Ward first contend that 10 *Del.C.*, § 950(7), as amended, deprives them of due process of law protected by the Fourteenth Amendment to the United States Constitution which reads, in pertinent part, as follows:

> [N]or shall any State deprive any person of life, liberty, or property, without due process of law.

They argue that they have an important private right in a relationship with their grandchildren, and that visitation is crucial to maintaining this relationship. Under § 950(7), as amended, however, such visitation is barred if the children's parents object, without the grandparents being given an opportunity to have the matter heard and determined by a Court. Thus, they claim they are being denied an important private right without fair procedures being followed—without "due process of law".

In order to invoke the protection of the due process clause a party must claim an interest which is one of constitutional dimensions. In other words, the right which they assert in this case, the right to associate with their grandchildren through visitation, must be one which is generally recognized as a right protected by the Constitution. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Smith v. Organization of Foster Families for Equality and Reform*, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977). As the United States Supreme Court stated in *Roth:*

> But to determine whether due process requirements apply in the first place we must look not to the "weight" but to the nature of the interest at stake ... We must see if the interest is within the Fourteenth Amendment's protection of life and property. 408 U.S. at 570–71, 92 S.Ct. at 2705, 2706.

Is, then, the right of a grandparent to enjoy a relationship with a grandchild a right which has been generally recognized as protected by the Fourteenth Amendment?

The "liberty interest" guaranteed by the Amendment has not been defined with exactitude, but it includes:

> [T]he right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to *enjoy those privileges long recognized at common law* as essential to the orderly pursuit of happiness by free men.

*Meyer v. Nebraska*, 262 U.S. 390, 397, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923) (emphasis added).

At common law, parents had the right to control and select the persons with whom their child would associate as long as the parents had not forfeited this right in a manner recognized by law. *Dogole v. Cherry*, Pa.Super., 196 Pa.Super. 46, 173

A.2d 650 (1961). Thus, it appears that grandparents had no common-law right to visitation, their rights being derivative through the natural parent. The parents' obligation to allow visitation with the grandparent was characterized as a moral, not a legal, obligation. 67A C.J.S. *Parent and Child,* § 41(c) (1968). This is the rule generally followed by courts in this country in ruling on grandparents' visitation. *Id. See also* Annotation, "Visitation Rights of Persons Other Than Natural or Adoptive Parents," 98 A.L.R.2d 325 (1964).

In recent years, however, the grandparent-grandchild relationship has received increasing attention from both state legislatures and the courts which, petitioners suggest, indicate that the relationship is one which should be given constitutional protection. For example, many states have, like Delaware, enacted statutes providing for grandparent visitation in prescribed circumstances. 11 Fam.L.R. (BNA) 3020 (May 7, 1985). At least one state has, by statute, imposed on grandparents a duty to support grandchildren born to their dependent children. § 49.90, Wis.Stats. In child custody matters the State of Delaware prefers placement of a dependent child with a relative, including a grandparent, to a non-relative placement. See policy manual of Division of Child Protective Services, "Placement Services", III.79.

Thus, it is fair to say that the law increasingly acknowledges and respects the relationship between grandparent and grandchild and has recognized certain rights and duties which flow from such a relationship.

A review of applicable case law also reveals that, on occasion, courts have found grandparents to have a constitutionally protected interest in their grandchildren.

For example, in *Ellis v. Hamilton,* 669 F.2d 510 (7th Cir.1982), the court held that an individual who was the great-aunt, adoptive grandmother and de facto mother of several minor children had sufficient interest to support a claim against welfare and judicial officers for the wrongful removal of the grandchildren from her home and the subsequent adoption by others without notice to her. The court stated: "Despite the absence of compelling authority for holding that grandparents have a liberty interest under the due process clause, we draw back from concluding that they never do." *Id.* at 513. *See also Drollinger v. Milligan,* 552 F.2d 1220 (7th Cir.1977).

In a similar vein, the Superior Court of this State in *Alma G. v. D.C.P.S.,* Del.Super., C.A. No. 83A–AU–8, Martin, J. (Apr. 30, 1985), concluded that a constitutionally cognizable liberty interest in the continued custody of a grandchild was present under the circumstances disclosed:

> While appellant is not the natural parent of and moreover has never had *legal* custody of Patsy, for more than six years she served as the child's primary caretaker and "psychological parent". *See generally* Goldstein, Freund & Solnit, *Beyond the Best Interests of the Child* (1973). She cared and provided emotional and financial support (gratuitously) for Patsy on a daily basis. By virtue of having "assumed responsibility for ... [the] child's care," appellant was Patsy's "custodian." 10 *Del.C.,* § 901(6); *see* Family Court Rule 10. Furthermore, by virtue of her biological relationship to the child, that is, grandparent-grandchild, their relationship constituted a "family" within the meaning of 10 *Del.C.,* § 901(9) and Family Court Rule 10. *See also Moore v. City of East Cleveland, Ohio,* 431 U.S. 494, 504 [97 S.Ct. 1932, 1938, 52 L.Ed.2d 531] (1977).

A careful reading of these cases shows, however, that the constitutionally protected interest asserted by the grandparents developed out of what was in effect a custodial relationship with the grandchildren, in which the grandparents had undertaken responsibility for the day to day care and nurturing of the children.

This suggests that any liberty interest exists only where the grandparent-grandchild relationship is essentially a custodial one. This is not the situation here, where petitioners seek a relationship through periodic visitation.

Other authorities support this view and also indicate that, even where a liberty

interest exists in the grandparents, the interest becomes substantially attenuated, if not nullified, when the interests of the child's parents are in conflict with it.

Particularly instructive in this regard is *Smith v. Organization of Foster Families for Equality and Reform*, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977), in which the United States Supreme Court addressed, but did not resolve, the issue of whether foster families had a constitutional interest in the continued custody of foster children. The foster parents argued that after a child resided with the foster family for one year or more, a psychological tie is created which constitutes the foster family the true psychological family of the child and that family thereby had a constitutionally-protected interest.

The Supreme Court acknowledged that freedom of choice in matters of family life is indeed one of the liberties protected by the due process clause of the Fourteenth Amendment, citing *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974). Further, the Court in defining the term "family" for purposes of the due process clause observed that the existence of a protected "family" relationship is not necessarily determined by biological tie alone. Rather, the Court stated:

> [T]he importance of the familial relationship, to the individuals involved and to society, stems from the *emotional attachments that derive from the intimacy of daily association*, and from the role it plays in "promoting a way of life" through the instruction of children.

*Smith*, 431 U.S. at 844, 97 S.Ct. at 2109 [citing *Wisconsin v. Yoder*, 406 U.S. 205, 231–33, 92 S.Ct. 1526, 1541, 1542, 32 L.Ed.2d 15 (1972)] (emphasis added).

This language suggests, as do the cases discussed above, that any constitutionally protected interest flows from a relationship which is essentially a custodial relationship.

However, this case also supports the primacy of the interests of a child's parents over similar interests of other individuals. According to the Court, "whatever liberty interest might otherwise exist in the foster family as an institution, that interest must be substantially attenuated where the proposed removal from the foster family is to return the child to his natural family." *Smith*, 431 U.S. at 846–47, 97 S.Ct. at 2110, 2111.

A similar approach has been followed by Delaware courts. For example, in *Petitioner F. v. Respondent R.*, Del.Supr., 430 A.2d 1075 (1981), the Delaware Supreme Court affirmed the Family Court's order dismissing a putative father's petition for custody or visitation rights with regard to a child conceived and born during the marriage of the mother to another man who acknowledged paternity. Judicial access, the Delaware Supreme Court held, was properly denied despite the United States Supreme Court's ruling in *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed. 2d 551 (1972), because:

> *Stanley* afforded constitutional recognition to the interest of a putative father in the children he has *sired and raised*. That interest is certainly distinguishable from that of the putative father in this case who, in the eyes of the law and in actuality, is a stranger to the child. Most significantly, *Stanley* held that an unwed father's interest warranted due process protection "absent a powerful countervailing interest". In *Stanley*, there was no such interest; in this case, however, there exists very powerful countervailing public interest in promoting the marital relationship, preserving intact as existing family unit, and protecting the minor child from confusion, torn affection, and the lifelong stigma of illegitimacy. Thus, even assuming *arguendo*, that the putative father has a constitutionally cognizable interest, that interest would be outweighed by the competing public interest and public policy in this case, and he must be denied judicial access.

*Petitioner F. v. Respondent R.*, 430 A.2d at 1078–1979 (emphasis added). *See also F.McG. v. L.V.*, Del.Super., No. 81A–MY–8, Taylor, J. (October 5, 1982).

This same reasoning is applicable in the instant case: Grandparents, as a general

rule, are not charged with the responsibilities of raising their grandchildren when the grandchildren reside with their parents, and, absent such a custodial relationship, no liberty interest is conferred upon them. Even if it is assumed that a biological tie to the grandchildren, coupled with a special and positive relationship with them, confers such an interest upon the grandparents, when the children reside with the parents who are cohabiting as husband and wife this interest can never rise to the level of or supersede the fundamental interest of the parents in raising their children in an intact family unit.

> The common law rule against coercing grandparent visitation over parental objection demonstrates a respect for family privacy and parental autonomy. The rule recognizes that government is ill-equipped to dictate the details of social interaction among family members. It also recognizes that the *parenting right is a fundamental liberty interest* that is protected against unwarranted state intrusion.

*Olds v. Olds*, Iowa Supr., 356 N.W.2d 571, 574 (1984) (emphasis added).[3]

 In summary, in order to invoke the protection of the Fourteenth Amendment to the United States Constitution, petitioners bear the burden of demonstrating that a constitutionally recognized interest is at issue. This they have failed to do. The "right" to grandparent visitation is not one "long recognized at commonlaw as essential to the orderly pursuit of happiness of free men". *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). Further, any liberty interest in the preservation of the family unit is not bestowed by virtue of the assertion of a biological link to the child. *See, Smith v. Organization of Foster Families for Equality and Reform,*

431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977); *Petitioner F. v. Respondent R.,* Del.Supr., 430 A.2d 1075 (1985). Rather, it arises from "the emotional attachments that derive from the intimacy of *daily association, and* from the role [the family] plays in promoting a way of life *through the instruction of children".* *Wisconsin v. Yoder,* 406 U.S. 205, 231–33, 92 S.Ct. 1526, 1541, 1542, 32 L.Ed.2d 15 (1972). This interest does not exist where the relationship is one where the contact is less immediate, and sustained only through periodic visitation.

Even should this court decide to recognize such an interest, that interest must bow to the fundamental liberty interest of the parents in raising their children as they see fit.

Accordingly, petitioners assert no constitutionally protected right and this denial of judicial access in these circumstances cannot be classified as a denial of due process to the grandparents.

### 2. The "equal protection" argument:

Russell and Edna Ward also claim that 10 *Del.C.,* § 950(7), as amended, denies them the equal protection of the law, guaranteed by the Fourteenth Amendment to the United States Constitution.[4]

They argue, in effect, that § 950(7), as amended, does not treat all grandparents equally. Grandparents of children whose parents live together may not be awarded visitation over the parents' objection, whereas grandparents of children whose parents do not live together may be awarded visitation even if the parents object. Such disparate treatment, they claim, amounts to an arbitrary and invidious dis-

---

**3.** Going a step further, if the court assumes that a liberty interest exists and proceeds to balance the interests of the grandparents, the parents and the State as urged by petitioners, it would still be difficult to find a denial of due process in this case given the strong public interest in preserving intact an existing family unit and protecting the minor child from confusion and torn affection. Moreover, the risk of erroneous deprivation of the grandparents' "right" to visi-

tation is minimal: it is the parents in the intact family unit that have daily contact with the child and are the most reliable sources of information with regard to the child's best interests.

**4.** The Fourteenth Amendment provides, in pertinent part: "[N]or [shall any State] deny to any person within its jurisdiction the equal protection of the laws."

crimination against one group of grandparents.

The guiding principle of equal protection is that all persons who are similarly situated must be treated alike. 16A Am.Jur.2d *Constitutional Law*, § 738 (1979). No equal protection problem is involved if the persons are not similarly situated. *Locke v. Ladd*, N.H.Supr., 119 N.H. 136, 399 A.2d 962 (1979); *Tigner v. Texas*, 310 U.S. 141, 60 S.Ct. 879, 84 L.Ed. 1124 (1940). Furthermore, any classification must be reasonable, not arbitrary, and there must be a valid reason for the disparate treatment of the legislation. *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920).

In an equal protection matter such as this, the court must determine two matters: first, whether the subject matter of the statute in question involves a permissible and legitimate concern of the state; second, whether the statute is a reasonable tool for effectuating the purpose. *Blake v. State*, Del.Super., 344 A.2d 260, 261 (1975), *citing State v. Danberg*, Ct.Gen.Sess.Del., 6 A.2d 596 (1939); *State v. Hobson*, Del. Supr., 83 A.2d 846 (1951).

There is no question that the subject matter of § 950(7), as amended, is a legitimate and permissible concern of the State. The State as *parens patriae* may enact reasonable legislation in the interest of those suffering from legal disability, such as minors. Furthermore, the legislature acts under inherent and not enumerated powers and is restricted only by constitutional provisions. Although § 950(7), as amended, does not specify the legislative intent, it appears to be clearly designed to recognize that parents in a traditional family relationship have a fundamental right to raise their children as they see fit and determine with whom their children shall associate, free from judicial interference. Where no constitutionally-suspect classification is involved or fundamental right affected, it is sufficient if a state of facts may be reasonably conceived which would justify the legislation. *Kreisher v. State*, Del.Supr., 319 A.2d 31 (1973).

Respondents seem to advance the argument that all grandparents are similarly situated, and, therefore, *any* line-drawing by the legislature results in an invidious discrimination. However, differentiation is not necessarily discrimination. 16A Am. Jur.2d *Constitutional Law*, § 746 (1979). Discrimination occurs only if there is not a valid basis for the disparate treatment. *See Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920).

■ There appears to be valid reasons to support the legislative grant of power to parents living together as opposed to parents who are living apart or where one parent or both are deceased. Stated simply, parents, natural or adoptive, living together as husband and wife are more likely to make decisions regarding with whom their children associate in a manner that protects their children's best interests. Personal animosity towards the other parent and his or her family is less likely to color this visitation decision. Furthermore, parents living together are equally informed regarding the children's needs and desires.

Under the statutory scheme of § 950(7), as amended, it is possible that grandparents whose child and child's spouse or ex-spouse live apart but jointly object to grandparent visitation will be afforded a hearing while grandparents whose child and spouse live together and jointly object to the visitation will be denied that privilege. Nevertheless, the same considerations could conceivably apply: wherever the family unit has broken down, decisions, even jointly made decisions, are more susceptible of judicial scrutiny because of the consequent disruptions and adverse emotional climate that may result therefrom.

For these reasons, this Court concludes that 10 *Del.C.*, § 950(7), as amended, does not deny respondents equal protection of the law.

3. *The "separation of powers" argument:*

■ Finally, petitioners suggest that 10 *Del.C.*, § 950(7), as amended, violates the

separation of powers principle in that the Delaware General Assembly has denied petitioners access to the courts. Assuming that the doctrine of separation of powers applies under the Delaware Constitution, but see *Opinion of the Justices,* Del.Supr., 88 A.2d 128 (1952), *State v. Schorr,* Del. Supr., 131 A.2d 158 (1957). I am not persuaded that a violation of that principle has occurred here.

While it is generally accepted that the legislature may not deprive litigants from raising questions involving their fundamental rights in an appropriate judicial proceeding and the legislature may not deprive the courts of hearing such questions, as discussed above, petitioners have not demonstrated that their fundamental rights are involved in this dispute or that grandparents in general have a fundamental right to visitation of their grandchildren. It follows, then, that there is no violation of any separation of powers principle.

In closing, I feel compelled to express my regret at the inability of the litigants in the instant case to function as a harmonious extended family unit. It is particularly regrettable that children who love *both* their parents and their grandparents have become pawns in animosities and differences among adults. This opinion is not to be taken as the Court's endorsement of the position taken by the natural parents in this matter; indeed, the Court would remind them of what other courts have stressed: that it is the moral duty of parents to promote and strengthen association between grandchildren and grandparents. Nor does the Court's decision necessarily imply approval of the approach taken by the Delaware General Assembly in enacting § 950(7), as amended. Nevertheless, after careful review, I am convinced that that legislation does not violate constitutional principles and accordingly I must DENY Russell and Edna Ward's Motion to Dismiss.

Based on the stipulated facts and the affidavits of Daniel and Barbara Ward to the effect they object to continued visitation of their children with their grandparents, their Motion to Modify the Visitation Order of this Court of February 12, 1985 is hereby GRANTED and visitation is accordingly terminated.

Because the Court has granted the Petition to Terminate Visitation, filed after the effective date of 10 *Del.C.,* § 950(7), as amended, there is no need for it to consider questions of the retroactivity of § 950(7), as amended. IT IS SO ORDERED.